## BIGELOW CARPET Co. v. DOBSON.*

## HARTFORD CARPET Co. v. SAME.*

*(Circuit Court, E. D. Pennsylvania.* January 27, 1882.)

1. INFRINGEMENT—ASCERTAINMENT OF DAMAGES.

In cases of wilful infringement respondents ought to be held to the most rigid accountability, and no intendment ought to be made in their favor founded upon the alleged inconclusiveness of the complainant's proof of loss. Such proof ought to be interpreted most liberally in favor of complainants, within the limit of an approximately accurate ascertainment of their damages.

2. SAME.

Where, in a suit for infringement of a patent for a carpet design, the evidence showed the quantity of complainants' carpet sold during the season of its first introduction, its cost, the profit upon it, the quantity of the infringing carpet sold by respondents during the following season, and that there was a decline in complainants' sales, the measure of damage is the profits which would have accrued to complainants upon the quantity of carpets sold by respondents. This latter quantity must, under the circumstances, be presumed to have displaced an equal quantity of complainants' carpets.

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

Exceptions to master's report in three cases—two of them by the Bigelow Carpet Company, for infringement of letters patent Nos. 10,870 and 10,778, for designs for carpets; and the third by the Hartford Carpet Company, for infringement of letters patent No. 11,074, for designs for carpets. The respondents had made no defence, and final decrees having been entered against them, the cases were referred to a master to ascertain and report the damages. In each case complainants proved that during the first six months after the introduction of the design a specific quantity of the carpet was sold, and they also gave evidence of its cost and their profit on it. The quantity of the infringing carpet subsequently sold by respondents was also shown. Complainants claimed that the effect of respondents putting upon the market carpets of the same design at a less price was to decrease the demand for the original carpet, and compel a change of design. They claimed damages based upon estimates made by their witnesses as to the probable amount of their sales of the original carpet if respondents had not infringed, and no other cause had occurred to diminish the demand. They also claimed the expense of changing their designs, as estimated by their witnesses. The master reported that while the effect of the infringement was to decrease the complainants' sales, he was entirely unable to find from the evidence the amount of their damage, or even to approximate its sum, and he therefore awarded only nominal damages. To this report complainants filed exceptions.

*A. v. Briesen* and *Joseph C. Fraley*, for complainants.

*George E. Buckley*, for respondents.

McKENNAN, C. J. These were all suits for infringement by the respondents of designs for carpets patented to the complainants. The infringing designs are exact counterparts of the patented ones, and carpets embodying them were put upon the market by the respondents some time after the date of the patents and the introduction of carpets containing the designs described in them by the complainants. No defence was made by the respondents, and they therefore occupy the attitude of wilful infringers.

Under these circumstances the respondents ought to be held to the most rigid accountability, and no intendment ought to be made in their favor founded upon the alleged inconclusiveness of the complainants' proof of loss. On the other hand, such proof ought to be considered and interpreted most liberally in favor of the complainants, within the limit of an approximately accurate ascertainment of their damages.

The master has not so dealt with the evidence presented to him, and has, therefore, fallen into error in his conclusion. He has found nominal damages only in favor of the complainants, although they furnished proof by which the damages claimed by them might, to some extent at least, be legally measured.

In this category is the evidence of the number of pieces and yards of the complainants' carpets manufactured during the season of its first introduction upon the market, the cost per yard of their manufacture, and the prices at which they were sold in the market; the number of pieces and yards of infringing carpets made and sold by the respondents in the following season, and the very large decline in the complainants' sales during this period. It furnishes the means of accurate computation of the complainants' profits, and of the extent to which the market was occupied by the respondents. All that is left for presumption is that the infringing carpets displaced in the market the complainants' carpets, and hence that the profits which would have accrued to them upon the quantity of carpets put upon the market is the measure of their damages.

This presumption, as against a wrong-doer, is not unreasonable, and it has the sanction of numerous decisions. *Putnam* v. *Lomax,* 9 FED. REP. 448; *American Saw Co.* v. *Emerson,* 8 FED. REP. 806; *McComb* v. *Brodie,* 2 O. G. 117; *Westlake* v. *Cartter,* 4 O. G. 636.

Upon this basis there is no difficulty in stating an account against the respondents; and this is the only one upon which, under the evidence, the complainants' damages can be computed. It is enough for us to say that the losses claimed for the entire decline in the complainants' sales, and on looms, are too remotely connected with the defendants' acts as their supposed cause, and hence are too speculative in their character to entitle them to allowance.

It sufficiently appears that the respondents made and sold 20 pieces of 55 yards each, 1,100 yards in all, of carpets containing the design described in No. 30 of April term, 1879, and that the complainants' profit upon carpets of that design was 67 cents per yard. They lost, therefore, this sum upon 1,100 yards, and their damages amount to $737, for which a final decree must be rendered in their favor.

In No. 34, April term, 1879, which is founded upon the patent for what is popularly called the "Pagoda Pattern," the respondents made 20 pieces of 50 yards each, in all 1,000 yards, the profit of complainants for like carpet being 75 cents per yard. The respondents have not disclosed what became of the carpets thus made by them, and

they are, therefore, held accountable for them as if put upon the market. The complainants' damages in this case are, then, 75 cents upon 1,000 yards, equal to $750, for which a final decree will be entered in their favor.

In No. 35, April term, 1879, the respondents made 53 pieces of the Chinese Lantern pattern of 50 yards each, but sold only 35 pieces, the rest having been sealed up by the marshal.

The complainants' damages in this case are, therefore, 75 cents upon 1,750 yards, amounting to $1,312.50, for which a final decree will be entered in their favor.